IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANTHONY PAIZ,

        Plaintiff,

vs.                                                        Civ. No. 00-1441 MV/RLP

UNITED STATES POSTAL SERVICE,
*et al*.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant United States Postal Service's Motion for Summary Judgment, filed June 30, 2004, **[Doc. No. 69]**. The Court, having considered the motion, briefs, relevant law, and being otherwise fully informed, finds that the motion is well-taken and will be **GRANTED in part** and **DENIED in part**.

## BACKGROUND

Plaintiff Anthony Paiz was employed by Defendant United States Postal Service ("USPS") from 1989 until 1999.[1] From 1997 to 1999, Plaintiff was a rural carrier assigned to the Coronado Post Office Station ("Coronado Station") in Santa Fe, New Mexico. The Coronado Station was managed by J.R. Trujillo ("Trujillo") and Plaintiff's immediate supervisors at Coronado Station were Gilbert Mora ("Mora") and Ruben Romero ("Romero").

---

[1] On Defendant's Motion for Summary Judgment, the facts must be taken in the light most favorable to Plaintiff; accordingly, in the recitation of the facts, the Court will describe the facts as supported by the Plaintiff's evidence.

In late 1997, Plaintiff began having attendance problems. In December 1997, Plaintiff was issued a notice of suspension of fourteen days for being absent without leave ("AWOL"). On February 24, 1998, Plaintiff was issued another fourteen day suspension for being AWOL. Despite these suspensions, Plaintiff's irregular attendance continued. On August 24, 1998, Romero informed Plaintiff that he needed to report to work on time and be regular in attendance. Over the next three weeks, Plaintiff was absent from work six days on unscheduled sick leave and was AWOL two days. At this time, Romero submitted paperwork to the USPS District Office ("District Office") requesting termination of Plaintiff due to his irregular attendance. The District Office denied Romero's request to terminate Plaintiff but did authorize another fourteen day suspension, which Romero issued on October 20, 1998.

On November 24, 1998, Plaintiff contacted his supervisor and told him that he did not have transportation to work and would be out until he could acquire a vehicle. Plaintiff did not report to work on November 25, 27 and 30, 1998. It is undisputed that Plaintiff was physically capable of performing his duties on November 24, 25, and 27, 1998.

On November 30, 1998, Romero sent a Duty Status Letter to Plaintiff stating that Plaintiff had been off work since November 24, 1998; that he had not notified USPS as to the nature of his absence; that he had not returned to work or provided acceptable documentation supporting his absence; and that he needed to report to work no later than December 3, 1998. The letter instructed Plaintiff to notify Romero immediately upon receipt of the letter if he was unable to return to work and informed him that he must submit medical documentation or other appropriate documentation explaining his absence within three days of receipt of the letter. Upon receipt of this letter, Plaintiff called Romero and arranged to meet with him on December 3, 1998.

2

On December 3, 1998, Plaintiff met with Romero at the Coronado Station. At this meeting, Plaintiff, who was suffering from severe reactive depression, told Romero that he was not feeling well enough to return to work. Romero told Plaintiff that he needed to get medical documentation for the time that he was off work and suggested that Plaintiff consider taking leave under the Family Medical Leave Act ("FMLA") if he was going to be off work for an extended period. Plaintiff agreed to provide medical documentation.

On December 7, 1998, Plaintiff met with Romero and informed him that he had an appointment to see his doctor the next day and would be submitting documentation justifying his absence shortly thereafter.[2] On December 11, 1998, Romero filled out a Supervisor Worksheet for Personnel Action requesting Plaintiff's termination based on Plaintiff being absent without leave for the period November 24, 1998 through December 11, 1998.[3]

On December 16, 1998, Romero sent a second Duty Status letter to Plaintiff, instructing him to submit detailed medical or other appropriate documentation explaining the reason for his absence from November 24, 1998 through December 16, 1998. The letter stated that the documentation must be submitted within seven calendar days of Plaintiff's receipt of the letter and that failure to comply with the requirements set forth in the letter could result in his removal from

---

[2] In his opposition, Plaintiff disputes that he met with Romero on December 7, 1998. Plaintiff, however, has submitted no evidence in support of his position that this meeting did not occur. Unsubstantiated allegations carry no probative weight in summary judgment proceedings. *Phillips v. Calhoun*, 956 F.2d 949, 951 n. 3 (10th Cir.1992). Furthermore, whether this meeting occurred is not material.

[3] This request was apparently denied because Romero filed another request to terminate Plaintiff on January 27, 1999. Furthermore, Romero stated in the December 16, 1998 Duty Status Letter that he had not initiated any action against Plaintiff. *See* December 16, 1998 Duty Status Letter ("In the spirit of good faith and prior to initiating any action you are hereby instructed to return to duty on your first scheduled workday after your receipt of this letter.").

the USPS. Plaintiff did not receive this letter.

On December 18, 1998, Plaintiff's doctor, Dr. Edward Ward, filled out the Certification of Health Care Provider ("Certification")[4] form required by USPS for FMLA leave. According to the Certification, Plaintiff had been off work since November 24, 1998 due to a "medical illness causing incapacity" but could return to work on December 21, 1998. Box 4 of the form, which requests the medical facts supporting the Certification, was blank.

Plaintiff immediately went to Coronado Station and gave the Certification to Trujillo. Plaintiff asked Trujillo if he should report to work the following Monday, December 21, 1998. Trujillo said that he saw no reason why Plaintiff could not return to work but requested that Plaintiff call Romero on Monday morning prior to coming to work.

On Monday morning, Plaintiff called Romero to ask whether he should report to work. Romero told him that he had not spoken to Trujillo and that he would call Plaintiff back. Romero never called Plaintiff. On December 24, 1998, Plaintiff went to Coronado Station and spoke to Romero. At this meeting, Romero informed Plaintiff that his Certification was insufficient and that he would receive a letter from the Albuquerque office regarding the specific information that was needed.

On December 31, 1998, Romero sent a third Duty Status Letter to Plaintiff informing him that the Certification signed by Dr. Ward was unacceptable because it did not contain a diagnosis and prognosis regarding Plaintiff's medical condition. Plaintiff was instructed to submit detailed medical or other appropriate documentation explaining the reasons for his absence from

---

[4] The Certification of Health Care Provider, Form WH-380, is an optional document prepared by the United States Department of Labor for employees to use to obtain medical certification from health care providers that meets FMLA's certification requirements.

November 24, 1998 through December 31, 1998.  Plaintiff did not receive this letter.[5]

On or about January 26, 1999, Plaintiff received a letter from USPS notifying him that a fact-finding had been scheduled to find out why Plaintiff had not responded to the Duty Status Letters sent to him on December 16 and 31, 1998.  Plaintiff immediately went to Coronado Station to discuss the fact-finding letter with Trujillo.  During this meeting, Plaintiff told Trujillo that he not received the December 16 and 31, 1998 Duty Status Letters.  Trujillo told him that his request for FMLA leave was denied and that he was being terminated from the USPS.  On January 27, 1999, Romero filled out a Supervisor Worksheet for Personnel Action, requesting Plaintiff's termination for being AWOL.

On January 29, 1999, Dr. Ward provided Plaintiff with a letter detailing Plaintiff's diagnosis and prognosis.  Dr. Ward stated that Plaintiff was being treated for symptoms of severe reactive depression, that his prognosis was good, that he was fit for work and that he was frustrated by his inability to return to work.  Plaintiff did not provide this letter to USPS because he had already been informed by Trujillo that he was being terminated.  On February 9, 1999, USPS issued a Notice of Removal to Plaintiff, notifying him that he was being removed from the USPS for being AWOL since November 24, 1998.

---

[5] In his verified Complaint, Plaintiff denied receiving the December 31, 1998 letter.  This statement is corroborated by Trujillo, who stated that Plaintiff told him on January 26, 1999, that he did not receive the December 16, 1998 and December 31, 1998 Duty Status Letters.  In his deposition, however, Plaintiff appears to admit that he received the December 31, 1998 letter.  It is apparent from Plaintiff's deposition testimony, however, that Plaintiff was mixing up several of the letters.  Given the nearly five-year lapse of time between the events at issue and the date of Plaintiff's deposition, Plaintiff's inability to remember the exact date certain events happened and which letters he received is understandable.  Given these discrepancies, the Court will rely on the statements made in Plaintiff's verified Complaint, which are more detailed, closer in time to the events at issue, and consistent with the documentary evidence.

On October 16, 2000, Plaintiff filed a Complaint against USPS, Trujillo, Romero and Mora, alleging violations of the Family and Medical Leave Act (FMLA) (Claims I-II), breach of contract (Claim III), breach of the covenant of good and fair dealing (Claim IV), retaliatory discharge (Claim V) and intentional infliction of emotional distress (Claim VI).  All of Plaintiff's non-FMLA claims and Plaintiff's FMLA claims against the individual Defendants were dismissed. *See* Memorandum Opinion and Order, filed on June 13, 2001, [Doc. No. 35].  USPS now seeks summary judgment on Plaintiff's FMLA claims against it.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Jones v. Kodak Medical Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999).  Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993).  There is no requirement that the moving party negate the nonmovant's claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters

for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citations omitted).  Rather than "merely show there is some metaphysical doubt as to the material facts," the nonmoving party is required to "go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial." *Kaus v. Standard Ins. Co.*, 985 F. Supp 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998).  There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *See Anderson*, 477 U.S. at 248.   Upon a motion for summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence."  *Kaus*, 985 F. Supp at 1281.

## DISCUSSION

FMLA provides eligible employees of a covered employer the right to take unpaid leave for a period of up to twelve work weeks in any twelve-month period for a serious health condition as defined by the Act.  29 U.S.C. § 2612(a)(1).  After the period of qualified leave expires, the employee is entitled to be reinstated to the former position or an equivalent one with the same benefits and terms of employment that existed prior to the exercise of the leave.  29 U.S.C. § 2614(a).  To insure the availability of these guarantees, FMLA declares it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided."  29 U.S.C. § 2615(a)(1).

When an employee alleges a deprivation of these substantive guarantees, the employee need only demonstrate by a preponderance of the evidence entitlement to the disputed leave.  The intent of the employer is immaterial.  *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955,

960 (10th Cir. 2002); *see also Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir. 1998) ( "Because the issue is the right to an entitlement, the employee is due the benefit if the statutory requirements are satisfied, regardless of the intent of the employer."). If dismissal would have occurred regardless of the request for FMLA leave, however, an employee may be dismissed even if dismissal prevents his exercise of his right to FMLA leave. *See Diffee,* 298 F.3d at 960.

The parties do not challenge that USPS is a covered employer and that Plaintiff is an "eligible employee" for purposes of FMLA. USPS contends that it is entitled to summary judgment because Plaintiff failed to submit documentation substantiating his request for FMLA leave, and, alternatively, because Plaintiff would have been dismissed regardless of his request for FMLA leave due to his non-FMLA related absences on November 24, 25, and 27, 1998.

1. Interference With FMLA Leave Request in Violation of § 2615(a)(1)

Plaintiff contends that USPS interfered with his FMLA right to take medical leave in violation of § 2615(a)(1) by not giving him adequate time to provide medical certification supporting his leave request.[6] When an employee provides notice that leave is needed, the regulations place on the employer the burden of ascertaining whether the employee's absence qualifies for FMLA protection. 29 C.F.R. § 825.303(b) ("The employer will be expected to obtain any additional required information through informal means."). FMLA includes a mechanism by which an employer may ascertain whether an employee's absence qualifies as

---

[6] In his Complaint, Plaintiff asserts that USPS interfered with his FMLA right to take medical leave in violation of § 2615(a)(1) (Count I) and discriminated against him for requesting FMLA leave in violation of § 2615(a)(2) (Count II). In his response, Plaintiff addresses only the claim that USPS interfered with his right to take medical leave and states that he "does not dispute dismissal of the retaliation claim." The Court interprets Plaintiff's statement as conceding to summary judgment on his discrimination claim under § 2615(a)(2) and will only address Plaintiff's § 2615(a)(1) claim.

8

FMLA leave. Specifically, the regulations implementing FMLA provide that an employer may require that an employee's request for FMLA leave be supported by a certification issued by the employee's health care provider. 29 C.F.R. § 825.305(a). The employee must provide medical certification "within the time frame requested by the employer (which must allow at least 15 calendar days after the employer's request), unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts." 29 C.F.R. § 825.305(b). The employer must advise an employee if the certification is incomplete, and provide the employee a "reasonable opportunity" to cure any such deficiency. 29 C.F.R. § 825.305(d).

On December 3, 1998, Plaintiff informed Romero that he was not well enough to return to work. This statement was sufficient to request leave under FMLA. *See* 29 C.F.R. § 825.303(b) (To request leave under the FMLA, an employee "need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed."). Under FMLA regulations, USPS had to allow Plaintiff at least fifteen days to provide medical certification in support of his request for FMLA leave. On December 11, 1998--only eight days after Plaintiff requested FMLA leave, Romero requested that Plaintiff be terminated for being AWOL. This request was apparently denied by the District Office. On December 18, 1998--exactly fifteen days after his request for leave, Plaintiff submitted the FMLA certification form prepared by his health care provider to USPS.

It is undisputed that Plaintiff's certification form was incomplete. It is disputed, however, if Plaintiff was notified that his form was incomplete. Under FMLA regulations, USPS had a duty to advise Plaintiff that his form was incomplete and provide him a reasonable opportunity to cure

9

the deficiency. On December 24, 1998, Romero told Plaintiff that his FMLA certification was incomplete and that he would receive a letter from the Albuquerque office regarding the additional information needed. On December 31, 1998, USPS sent a certified letter to Plaintiff informing him that his certification form was incomplete because it did not contain a diagnosis and prognosis. Plaintiff claims that he did not receive this letter and USPS concedes that the certified letter was returned unclaimed. USPS contends, however, that the letter was also sent via first-class mail and that the copy sent first-class mail was not returned. It does not appear that USPS made any other attempt to inform Plaintiff about the deficiencies in his FMLA certification.

  USPS had a duty to notify Plaintiff that his certification was deficient and then provide Plaintiff a sufficient opportunity to cure the deficiencies. Where an employer fails to give an employee an opportunity to correct a deficient certification, the employee is entitled to show that leave was FMLA-qualified at trial. *See Murray v. Red Kap Ind.*, 124 F.3d 695 (5th Cir. 1997) (employee who was terminated for failing to return to work after the time period certified by her physician was given an opportunity at trial to show that she suffered from a serious health condition during that period); *Sims v. Alameda-Contra Costa Transit Dist.*, 2 F.Supp.2d 1253, 1255 (N.D. Cal. 1998) (employee was terminated in violation of the FMLA because the employer did not give the employee a reasonable opportunity to cure the deficient medical certification). Whether Plaintiff was informed of the deficiencies in his certification form, and whether Plaintiff was given a sufficient period to cure these deficiencies, are disputed issues of material fact that preclude summary judgment on USPS's claim that Plaintiff failed to submit documentation substantiating his request for FMLA leave.

2.      Independent Basis For Termination

USPS contends that Plaintiff would have been terminated notwithstanding his request for FMLA leave because he was capable of working on November 24, 25, and 27, 1998 and his absence from work was not covered by his FMLA request.  A reason for dismissal that is unrelated to a request for an FMLA leave will not support recovery under an interference theory. *See McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1108 (10th Cir. 2002) (no interference if the employee would have been terminated in the absence of the FMLA request or leave); *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998) (to withstand summary judgment on an interference theory, an employee's termination must have been related to her request for an FMLA leave).

The evidence before the Court, however, does not establish that Plaintiff would have been terminated for being absent on November 24, 25, and 27, 1998 in the absence of his FMLA request.  The FMLA certification form provided to USPS erroneously certified that Plaintiff was medically incapacitated for the time period from November 24, 1998 to December 20, 1998.  It was only during discovery that Plaintiff admitted that it was a lack of transportation and not his medical condition that prevented him from working on November 24, 25, and 27, 1998.  There is no evidence that USPS was aware at the time it terminated Plaintiff that the dates on the FMLA certification form were incorrect or that Plaintiff was physically capable of working on November 24, 25 and 27, 1998.

Romero submits an affidavit stating that Plaintiff would have been terminated for being AWOL on November 24, 25, and 27, 1998 as evidenced by Romero's decision to remove Plaintiff on December 11, 1998.  Romero's statement is contrary to the record in this case.  First, it does

not appear that Romero had any authority to terminate Plaintiff. Thus, Romero's opinion that Plaintiff would have been terminated for missing these three days is immaterial. Second, Romero submitted a request to have Plaintiff terminated on December 11, 1998 for being AWOL from November 24, 1998 through December 11, 1998. That request was apparently denied. Consequently, USPS's argument that Plaintiff would have been terminated solely for missing three days of work in November due to a lack of transportation is unsupported by the record.

While a defendant may defend against an FMLA charge by arguing that an employee would have been dismissed even had he not requested FMLA-protected leave, it is clear in this case that Plaintiff was discharged because of his allegedly protected absences. The Notice of Removal states that Plaintiff was terminated for being AWOL from November 24, 1998 to February 9, 1999. *See* February 9, 1999 Notice of Removal. If Plaintiff's absences were protected by the FMLA, and if he complied with the notice and certification requirements of the Act, those absences could not be, as they clearly were, considered as a basis for Plaintiff's dismissal. As discussed above, there are factual issues relating to the sufficiency of the parties' actions that must be resolved by a fact finder. Accordingly, the Court cannot find as a matter of law that Plaintiff's termination was independent of his request for FMLA leave.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment, filed June 30, 2004, **[Doc. No. 69]**, is **GRANTED in part**. Judgment is granted in favor of

Defendant United States Postal Service on Plaintiff's claim under 29 U.S.C. § 2615(a)(2) (Count II).  In all other respects, Defendant's motion is **DENIED**.

>Dated this 9th day of November, 2004.

>>_____
>>MARTHA VÁZQUEZ
>>U. S. DISTRICT COURT JUDGE

Attorney for Plaintiff:
>Scott F. Voorhees, Esq.

Attorney for Defendant:
>Michael H. Hoses, Esq.