**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**ANTHONY PAIZ,**
      **Plaintiff,**

v.                                                  **Civil No.   CV 00-1441 MV/RLP**

**UNITED STATES POSTAL SERVICE,**
**et al.**

      **Defendants.**

**PLAINTIFF'S REQUESTED**
**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**<u>Findings of Fact</u>**

1.    Anthony Paiz worked for the United States Post Office from 1989 until 1999.

2.    From 1997 to 1999 Anthony Paiz was a rural carrier assigned to the Coronado Post Office Station.

3.    The Coronado Station was managed by J.R. Trujillo and Paiz's immediate supervisors were Ruben Romero and Gilbert Mora.

4.    In 1998 the Post Office referred Mr. Paiz to Dr. Neil Berman, a psychologist working for the Post Office employee assistance program. At that time Mr. Paiz was experiencing a great deal of stress related problems in his life.

5.    Mr. Paiz's supervisors, Ruben Romero and J.R. Trujillo were aware of Mr. Paiz's difficulties and aware of the fact that he was working to overcome the problems he was having.

6.    Plaintiff was off of work on November 24, 25 and 27 and contacted his supervisor about his absence and explained that he could not come to work because he did not have a vehicle.

7.    Plaintiff received a Duty Status Letter dated November 30, 1998. He responded to the letter by contacting Ruben Romero when he received the letter and making arrangements to see

Mr Romero.

8. When Anthony Paiz met with Mr. Romero on December 3, 1998, Mr. Romero told him that he needed to get medical documentation for the time that he was off work, and suggested that he apply for leave under the Family Medical Leave Act if he was going to be off work for an extended period.

9. Anthony Paiz agreed to provide medical documentation.

10. Mr. Paiz made an appointment to see his physician, Dr. Edward Ward at Lovelace Medical Center in December of 1998 regarding a request for FMLA leave.

11. On December 11, 1998 Ruben Romero a Supervisor Worksheet for Personnel Action requesting Plaintiff's termination based on Plaintiff being absent without leave for the period of November 24, 1998 through December 11, 1998.

12. On December 16, 1998 Ruben Romero sent a Duty Status Letter to Anthony Paiz instructing him to submit medical or other documentation explaining the reason for his absence. The letter stated that the documentation must be submitted within seven calendar days of Plaintiff's receipt of the letter and that failure to comply with the requirements set forth in the letter could result in his removal from his job.

13. Mr. Paiz did not receive a letter dated December 16, 1998 from the Post Office he complied with the request for documentation in the letter within two days of the date of the letter.

14. On December 18, 1998 Dr. Ward gave Mr. Paiz a completed Form WH-380 which he immediately took to the Post Office to give to Ruben Romero. Mr. Romero was not present so he gave the Form to J.R. Trujillo.

15. The Form WH-380 stated that he could return to work on December 21, 1998.

16. Mr. Paiz then asked Mr. Trujillo whether he could report to work the following Monday,

December 21, 1998. Mr. Trujillo said he would have to talk to Mr. Romero, but said that he saw no reason why he could not return to work.

17. Mr. Trujillo did not tell Mr. Paiz that the form was not complete nor did he ask for documentation concerning medications.

18. Mr. Paiz called Mr. Romero the following Monday to ask whether he could return to work but was told that Mr. Romero had not seen any papers ant that he would get back to him.

19. Mr. Paiz went into the Post Office on December 24, 1998 and spoke to Ruben Romero to see if he could return to work. At this meeting Ruben Romero informed Mr. Paiz that his documentation was insufficient and that he would receive a letter from the Albuquerque Office regarding the information that was needed.

20. On December 31, 1998 Ruben Romero sent a third Duty Status Letter to Mr. Paiz informing that the Certification signed by Dr. Ward was unacceptable because it did not contain a diagnosis and prognosis regarding Mr. Paiz's medical condition. Mr. Paiz was instructed to submit detailed or other appropriate documentation explaining the reasons for his absence from work November 24, 1998 through December 31, 1998.

21. Mr. Paiz received the December 31, 1998 letter from the Post Office on January 5, or 6, 1999 and went directly to the Post Office and met with J.R. Trujillo. At that time Mr. Trujillo told him that he was denying the FMLA leave, and that he was terminated from the Post Office, and Mr. Trujillo ordered him to leave the premises and not return.

22. Mr. Paiz did not provide any further information to the Post Office because he had been fired by J.R. Trujillo on January 5 or 6, 1999 and did not believe that he could provide further documentation to support his request for FMLA leave.

23. On January 29, 1999, Mr. Paiz's physician, Dr. Ward, issued a report stating his diagnosis

and prognosis. He stated that he had seen Mr. Paiz for symptoms of severe reactive depression and that he had a number of social stressors in his life. He further stated that Mr. Paiz was treated by a counselor and was on medication and that he was doing better. He also stated that Mr. Paiz's prognosis was good and that he was fit for work.

24. Mr. Paiz would have been able to provide this letter to the Post Office if he had been asked to provide more information from his physician. Instead, Mr. Trujillo fired Mr. Paiz and told him not to return to the premises.

25. On February 9, 1999 the USPS issued a Notice of Removal to Plaintiff notifying him that he was being removed from his job for being absent without leave since November 24, 1998.

26. Anthony Paiz had a serious health condition at the time that he requested FMLA leave that prevented him from doing his job.

27. Anthony Paiz grieved his termination and was reinstated on July 27, 2002.

28. Anthony Paiz lost work from December 21, 1998 to July 27, 2002, for a total of 3.55 years of work because of his termination.

29. Between December 21, 1998 and February 19, 2000 Mr. Paiz lost weeks of income for a loss of $48,404.62.

30. Between February 20, 2000 and July 27, 2002 Mr. Paiz lost 126.8 weeks of work at an average rate of pay of $791.43 per week for a loss of $100.353.32 in income, for a total loss of income of $148,757.94. This total does not include cost of living and other anticipated increases in income.

## Conclusions of Law

1   Anthony Paiz was a covered employee under the FMLA.

2   Anthony Paiz was met the requirements of the FMLA and was an eligible employee under

the Act.

3   Anthony Paiz submitted a Form WH-380 requesting FMLA leave within the time required by law.

4   Anthony Paiz had a serious health condition as defined in 29 CFR §825.114 in that he was undergoing continuing treatment by a health care provider following a period of incapacity and inability to work for a period of more than three consecutive calendar days.

5   Anthony Paiz was entitled to FMLA leave under the Act.

6   An employer must allow at least 15 calendar days for an employee to provide medical certification supporting leave under 29 CFR § 825.305.  The Postal Service started termination procedures against Mr. Paiz on December 11, 1998, only eight days after Mr. Paiz requested FMLA leave.

7   Mr. Paiz was willing and able to return to work on December 21, 1998 and was prevented from returning to work by J.R. Trujillo and/or Ruben Romero.  Mr. Paiz also made efforts to return to work after December 21, 1999 but was prevented from returning by Mr. Trujillo and Mr. Romero.

8   Anthony Paiz was effectively terminated from his employment with the Postal Service on January 5 or 6, 1999 when J.R. Trujillo fired him and told him to leave the premises and not return.

9   The termination occurred less than 15 days after the December 31, 1999 letter was sent to Mr. Paiz.

10  The allegations in the February 9, 1999 Notice of Removal letter are factually inaccurate and do not provide a legal basis for termination.

11  The United Stated Postal Service interfered with Anthony Paiz's entitlement to leave under

|    |    |
|----|----|
|    | the FMLA. |
| 12 | The United States Postal Service is liable to Anthony Paiz for lost wages in the amount $148,757.94 plus interest. |
| 13 | The United States Postal Service is also liable to Anthony Paiz for liquidated damages in an amount equal to his lost income and interest, pursuant to 29 USC §2617. |

SCOTT F. VOORHEES, P.C.

_____

Scott F. Voorhees
P.O. Box 6340
Santa Fe, New Mexico 87502
505 820 3302